**BOWLES, Price Adm'r, v. DASHIEL.**
Civil Action No. 2994.

District Court, D. Oregon.
May 6, 1946.

220

Francis E. Harrington and Don Eva, both of Portland, Or., for plaintiff.

John C. Veatch, of Portland, Or., for defendant.

McCOLLOCH, District Judge.[1]

Prior to the events chronicled here, Dashiel, the defendant, was employed by Inca Metals Products Corp. as sales manager. The firm manufactured aluminum griddles and had sold some before 1942 for use in CCC camps for $7.50 each. Organizing the Aluminum Fabricators in March, 1945, Dashiel bought the griddle part of Inca's business and claims the right as transferee to charge Inca's pre-war price. However, due to increased production and sales, the present price is $2.25 at the factory at Lake Grove, near Portland, Oregon, freight prepaid.

The Oregon District Office of OPA appears to have doubted the validity of Dashiel's claim to transferee rights, and insisted, so Dashiel testified, on threat of dire measures, including prosecution, that he file for a price under the "Fourth Pricing Method," which is the method for pricing articles that were not in use in March, 1942, or at an earlier date. This Dashiel did on July 24, 1945, without waiving his claim to transferee rights. The application was filed in the Portland, Oregon district office of OPA, and all prior negotiations, oral as well as written, were with the district office. Dashiel's Fourth Method application was forwarded to the Price Administrator in Washington, but the prior correspondence with the district office was not forwarded, nor was any statement sent to Washington which showed that Dashiel claimed transferee rights.[2]

Pursuant to the application, the Administrator made an order September 11, 1945, fixing the price of $2 per griddle with certain variances, freight prepaid. The order, which was made retroactive, contained no reference to Dashiel's claim of transferee rights; nor, as stated, did Administrator Bowles, who signed the order, know that such claim had been made to the district office.

This action is for forty thousand dollars approximately, three times the amount of alleged over-charges (the difference between $2.25 and $2 per griddle), on sales made during the year preceding the date of filing the complaint, November 29, 1945. An injunction is also asked.

Early History of the Case.

Counsel had agreed before Judge Fee on the form of a pre-trial order to the effect that the sole question for determination was whether Dashiel had transferee

---

[1] This case shows how a dictatorship works, aided by a gag law.

I will always maintain that a law which ties the hands of your opponent before you hit him, has no place in our land. Bowles v. Richards, 63 F.Supp. 946.

Congress has repealed Sec. 204(d) of the Price Control Act, as applied to sugar rationing. Public Law (30), approved March 31, 1947, 50 U.S.C.A.Appendix, § 981 et seq.

[2] This was developed by a memo, which I filed at the end of the trial and a responsive memo, which counsel for the Administrator filed. See Appendix A and Appendix B to this opinion.

rights. The day of the trial, which fell to me because of Judge Fee's absence on an up-State term, OPA resident counsel, a sound and trusted lawyer, asked to be relieved of the stipulation on the ground that other OPA counsel insisted that a trial as to the validity of defendant's claim to transferee rights would amount to questioning the validity of the order of September 11, 1945, contrary to Sec. 204(d) of the Price Control Act, 50 U.S.C.A. Appendix. § 924. (d).

I granted local counsel's request to be relieved from the stipulation, and it developed at the trial that other counsel (who was permitted to appear specially) took the position that, in making the order of September 11, the Administrator had considered and rejected defendant's claim to transferee rights.[3]

Counsel for the defendant, on the other hand, contended that defendant was not questioning the validity of the Administrator's order. He questioned only its applicability, he said. His client, he contended, had always claimed transferee rights and had not waived the claim by applying, under duress, for a price under the Fourth Pricing Method, which applied only to new articles manufactured for the first time since 1942.

## The Trial.

At the trial plaintiff introduced the order of September 11, and proved by defendant that he had made sales above the ceiling fixed by the order. Defendant in his own behalf testified, over objection, to the circumstances under which he acquired Inca's griddle business, claiming thereby to have acquired the right under the regulations to Inca's 1942 ceiling price.

Consistent with his revised theory of the case, plaintiff offered no testimony to dispute defendant's claim that he had acquired transferee rights and continued to insist that, whether or not the defendant was entitled to transferee rights, could not be inquired into, in view of the order of September 11, 1945.

## My View.

It seems plain to me that Administrator Bowles cannot be said to have passed on something, which not only was not presented to him, but about which he knew nothing. The most that has been held, in deference to the oft-repeated claim that "intolerable procedural burdens" should not be imposed on the Price Administrator, is that the Administrator need not give oral hearings though requested, but it has not, so far as I know, ever before been urged that the Administrator could wipe out a claim on which the existence of a business depends, without at least having before him and considering the documents presented in support of the claim;[4] and I would not expect Administrator Bowles to maintain that such had been his intention in making the order. If there were any doubt about this I would insist on having the Administrator's deposition taken.

## Origin of This Case.

I cannot leave this case without comment on its origin. It is one of a series of obviously punitive actions for which a (one time) influential source in the district OPA office is responsible, as the papers on file with us show. We have had in the court a number of cases of that origin. Nearly always the defendants were people of moderate, sometimes of small means. In all of these cases the full penalty permissible under the statute was demanded. When reasonable settlements were offered, they were rejected arrogantly. In one case a widow woman, having the added burden of

---

[3] Counsel took a different position later. See Appendix B, par. II.

The Circuit Court of Appeals seems to hold that the Administrator rejected defendant's claim of transferee rights. Unfortunately, the court did not have a complete record before it. Defendant was out of business and did not file a brief in the Circuit Court of Appeals.

An administrative order issued without some evidence to support it is void for want of jurisdiction. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L. Ed. 567. Compare Administrative Procedure Act, Sec. 10 (e) (B) (3), 5 U.S. C.A. § 1009 (e) (B) (3).

[4] I was giving the Administrator the benefit of the doubt. I did not think he would be "lawless" and take a valuable property right without considering some evidence. Estep v. United States, 327 U. S. 114, 121, 66 S.Ct. 423, 90 L.Ed. 567.

a paralytic brother, was pursued relentless-ly. Not only was no sympathy with the problems of the defendants ever shown, the methods employed in prosecuting the cases evinced a total lack of understanding of the principles of American justice. The cases, and others, constitute a discreditable chapter in law enforcement. They weaken the respect of the citizen for all law enforcement. They undermine the citizen's faith in his Government.

For the reasons earlier stated, judgment in this case will be for the defendant.[5]

### Appendix A.

### Memorandum After Trial.

■ As I stated at the trial, I need to know what record Administrator Bowles had before him, before I can determine whether the Administrator, as counsel contend, passed adversely on the defendant's claim that he had transferee rights. The defendant is therefore requested to file and serve a motion, supported by affidavit showing good cause, under Rule 34, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, for an order directing plaintiff to produce and permit the inspection and copying or photographing by or on behalf of the defendant of the record on which plaintiff based his Order (M.P.R. 188, Order 4411), more particularly described in the pleadings, proposed pre-trial order and the other prior proceedings herein. And the cause is re-opened for that purpose. Plaintiff will, of course, be given opportunity to resist the motion.

In the case of Morgan v. U. S., 304 U.S. 1, 17, 58 S.Ct. 999, 82 L.Ed. 1129, the Secretary answered interrogatories but, recognizing that the former Administrator is very busy, the procedure here suggested is, it seems to me, less onerous on plaintiff than the interrogatory or deposition method.

In Bowles v. West Side Lumber Co., 72 F. Supp. 218 in this court, at my request, copies of interoffice letters and telegrams, leading to the order there in question, were furnished without the difficulties that are being encountered in this case.

Dated April 19, 1946.

### Appendix B.

### Memorandum Filed by Plaintiff's Counsel Following the Trial and Before Judgment.

Plaintiff's counsel has been requested by the Court to furnish certain information for its consideration.

I. The Court's first inquiry is, "What did the Administrator have before him when he issued Order No. 4411 (10 F.R. 11,729) to the Aluminum Fabricators September 11, 1945, pursuant to Section 1499.-158 of Maximum Price Regulation 188". Plaintiff's counsel has made a diligent effort to ascertain if either the Portland District Office or the San Francisco Regional Office sent any information in to Washington that would affect the Administrator's thinking before issuing the order. First, a check was made with the Portland District Office. It appears from conversations with Mr. Huddleston, the Price Specialist who worked on this case, that all was forwarded to the Regional Office from this office was the application submitted by Mr. Dashiel with a transmittal form. A copy of this application is in evidence in this case. Attached to this memorandum and labelled "Exhibit A" is a copy of the transmittal form used. Mr. Huddleston states that, to his knowledge, no comment of any sort accompanied the application.

Plaintiff's counsel next called George H. Watson who was indicated as the recipient of the application in the Regional Office. The Court will notice his name on the Transmittal Form. Mr. Watson was asked by telephone what the policy of his office was in sending on to the National Office applications such as the one in this case. He stated that they were forwarded without comment. He also was asked to explain how the Administrator arrived at orders such as the one under consideration; in other words, how does the Administrator determine the matters in the orders. Mr. Watson stated that the Administrator has a staff of experts in various fields who are cognizant of conditions and prices in various industries. He felt that in this case the Administrator probably called in staff advisors who were experts

---

[5] The notes have been added to the opinion.

in the aluminum field and that the order was based largely on their opinions.

II. The Court has indicated in its request that it would like to know if the Administrator gave consideration to the question of whether or not Mr. Dashiel was a transferee of Inca Metals, Inc. Without being further informed, Plaintiff's counsel assumes that the Administrator did not consider this matter because the Administrator, having received an application for pricing under the Fourth Pricing Method, would appear to have no reason to consider whether Mr. Dashiel was a transferee since by applying Mr. Dashiel would be, in effect, stating that he wanted a price order under the Fourth Pricing Method. * * *

Dated at Portland, Oregon, this 3rd day of May, 1946.

### Appendix C.

#### Excerpts from Findings of Fact.

VIII. That on July 19, 1945, a price specialist in the local Office of Price Administration notified defendant that unless he, the defendant, filed an application under the Fourth Pricing Method of Maximum Price Regulation 188 for establishment of prices for the griddles he was selling that he, the defendant, would be subject to all of the penalties provided in the Emergency Price Control Act of 1942, and that if said local office found that he, the defendant, was selling griddles without first having so established a price that it would take enforcement action against defendant. That defendant, on or about the 24th day of July, 1945, filed an application under said fourth pricing method under duress and under protest, claiming that he was a transferee of the business of Inca Metals Products Co., and had a legal price for the griddles he was selling under the regulations of the Price Administrator. That, pursuant to said application, Order No. 4411 was issued on the 11th day of September, 1945, and that he did not waive his rights as transferee of Inca Metals Products Co.

IX. That, when said Administrator issued Order No. 4411 he only had before him defendant's said application. That the local Office of Price Administration did not forward with said application the written or any information which defendant had filed with and furnished to said office, claiming that he, the defendant, was a transferee of the business of Inca Metals Products Co., and had a price established pursuant to the provisions of the General Maximum Price Regulations of the Office of Price Administration, and the said administrator did not know any of this.

X. That plaintiff makes no claim that defendant is not a transferee of Inca Metals Products Co., or that said transferor did not have a legal price for the griddles it was manufacturing and selling at the time of said transfer or that defendant is selling or has sold griddles in excess of the price established at the time of said transfer and prior to March, 1942, or that defendant is selling or has sold griddles which are essentially different from the griddles sold at the time of said transfer and prior to March 1942, but claims that Order No. 4411 applies to all sales made by defendant and seeks to collect damages and penalties for sales made by defendant prior to the issuance of said order as well as for sales made subsequent thereto.